# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **AAMCO TRANSMISSIONS, LLC,**<br><br>　　　　**Plaintiff,**<br><br>　v.<br><br>**WILLIAM GLEASON and**<br>**DANNICOLE, LLC,**<br><br>　　　　**Defendants.** | Case No. |

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff AAMCO Transmissions, LLC f/k/a AAMCO Transmissions, Inc. ("AAMCO"), by its attorneys, and for its complaint against defendants William Gleason ("Gleason") and Dannicole, LLC ("Dannicole"), states as follows:

## INTRODUCTION

1.　　AAMCO is the national franchisor of the franchised network of AAMCO®-branded transmission repair and total car care centers operating throughout the United States and Canada. Defendants are the former co-franchisees of a franchised AAMCO® center in Norristown, Pennsylvania, which defendants operated under a written franchise agreement with AAMCO.

2.　　AAMCO recently terminated the franchise agreement for defendants' failure to report sales and pay royalties owed on those sales. In connection with terminating the franchise agreement, AAMCO demanded that defendants comply with their post-termination obligations, including de-identifying the center and abiding by the franchise agreement's post-termination noncompetition covenant.

3.　　Despite these obligations, defendants continue to operate the center at the same

location under AAMCO's trademarks, giving the public the confusing impression that the center remains an AAMCO-authorized center, when it is not.

4. AAMCO has already filed an arbitration demand against defendants for damages caused by their failure to pay royalties pursuant to the franchise agreement's arbitration provision. The arbitration is ongoing. AAMCO brings this action under the arbitration provision's carve-out for actions for equitable relief related to the use of AAMCO's proprietary marks and compliance with the post-termination noncompetition covenant. AAMCO seeks a preliminary and permanent injunction to enjoin defendants' trademark infringement, unfair competition, and continuing breach of the franchise agreement's post-termination covenants.

## PARTIES

5. AAMCO is a limited liability company organized under the laws of Pennsylvania with its principal place of business in Horsham, Pennsylvania.

6. Dannicole is a limited liability company organized under the laws of Pennsylvania with its principal place of business located in Norristown, Pennsylvania.

7. Defendant Gleason is a citizen and resident of Pennsylvania. He is the sole member and owner of defendant Dannicole.

## JURISDICTION AND VENUE

8. The Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.

9. Venue is proper under 28 U.S.C. § 1391(b)(1) because all defendants reside in this district and under § 1391(b)(2) because a substantial part of the events giving rise to the claim

occurred in this district.

11. Jurisdiction and venue are also proper in this judicial district because defendants expressly agreed in writing in the franchise agreement that any action between the parties would be brought in this Court, and they irrevocably consented, and waived any objection, to jurisdiction of and venue in this Court.

## GENERAL ALLEGATIONS

**A.    The AAMCO franchise system.**

11. AAMCO is the national franchisor of the AAMCO®-brand of transmission repair and total car care centers. There are currently more than 500 AAMCO® centers in operation throughout the United States and Canada.

12. AAMCO grants franchises to qualified persons to own and operate franchised AAMCO® centers under written franchise agreements with AAMCO, together with a limited license to use certain AAMCO-owned trademarks in connection with their centers.

13. Further, pursuant to its franchise agreements, AAMCO provides its franchisees comprehensive training on AAMCO's system (including but not limited to, AAMCO's proprietary sales and general business techniques, methods, and procedures); initial and ongoing technical training and advice; extensive advertising assistance; and access to national accounts and discounted pricing on certain equipment and supplies, such as remanufactured transmissions. AAMCO has developed these benefits at great effort and expense, and they afford AAMCO and its authorized franchisees a substantial competitive advantage in the automotive repair industry.

**B.    The AAMCO trademarks.**

14.    To identify the source, origin, and sponsorship of its products and services, and to distinguish those products and services from those established, made, offered, and sold by others, AAMCO and its franchisees have extensively used certain trademarks, service marks, trade names, logos, emblems, and indicia of origin in connection with the operation of authorized AAMCO®-branded centers.

15.    AAMCO's federally-registered trademarks include "AAMCO" and "AAMCO Transmissions Total Car Care" (and design), which are registered on the Principal Register of the United States Patent and Trademark Office, Registration Numbers 851,209 and 3,875,638, respectively (the "AAMCO Marks"). The AAMCO Marks' declarations of incontestability have been acknowledged and approved by the United States Patent and Trademark Office, and their federal registrations continue in full force and effect.

16.    AAMCO owns the AAMCO Marks, has given notice to the public of the registration of the AAMCO Marks as provided in 15 U.S.C. § 1111, and complies with all legal requirements to ensure that it, its affiliates, and its authorized franchisees remain the exclusive users of the AAMCO Marks.

17.    AAMCO, its affiliates, and its authorized franchisees have continuously used the AAMCO Marks in interstate commerce in connection with the promotion, sale, and franchising of AAMCO® automotive repair centers, and the promotion, offer, and sale of the products and services they offer throughout the United States since the date of the AAMCO Marks' registration.

18.    AAMCO, its affiliates, and its authorized franchisees have extensively advertised and promoted the AAMCO Marks and the products and services they offer in association with those marks throughout the United States and through various media. As a result of such efforts

and the considerable money spent in connection with those efforts, the products and services offered by AAMCO, its affiliates, and its authorized franchisees under the AAMCO Marks have been met with widespread public approval and have established demand and goodwill among customers and consumers throughout the United States.

**C.     The parties' franchise agreement.**

19.     Effective December 1, 2005, Gleason and Dannicole entered into a franchise agreement and amendment with Cottman Transmission Systems, LLC ("Cottman") for the operation of a Cottman®-brand transmission repair center in Norristown, Pennsylvania (the "Franchise Agreement").

20.     Shortly thereafter, Cottman and AAMCO came under common ownership. In connection with these events, defendants converted the Center from Cottman to AAMCO.

21.     To effectuate the conversion, effective October 13, 2006, Cottman, AAMCO, and the defendants entered into an amendment to assign the Franchise Agreement to AAMCO. Under the amendment, defendants acknowledged and agreed that all references in the Franchise Agreement to "Cottman" would be replaced with "AAMCO" and that defendants would convert the Center and operate it as an AAMCO-authorized franchisee.

22.     In 2009, defendants relocated the Center to its current address at 2917 Hannah Avenue A & B, Norristown, Pennsylvania under a written relocation amendment with AAMCO.

23.     Since 2009 defendants have continuously operated the Center at its current location as an AAMCO-authorized center.

24.     Under the Franchise Agreement, AAMCO agreed to provide, among other things, a limited license to use the AAMCO Marks, ongoing technical and business support and assistance, including access to AAMCO's confidential and trade secret methods, procedures, and techniques

for the operation of automotive repair centers.

25. In exchange, defendants agreed to pay AAMCO a continuing license fee equal to 7% of the gross business transacted at the Center during the preceding week. They further agreed to submit with each of those payments a report of all "gross business" conducted at the Center.

26. The Franchise Agreement authorized AAMCO to terminate it if defendants failed to pay any past due fees within ten days after receiving notice of such default or failed to cure any other default under the agreement within thirty days after receiving notice.

27. To induce AAMCO to enter into the Franchise Agreement, defendants agreed that for a two-year period following termination of the franchise agreement they would not engage in any similar business within ten miles of the Center or three miles of any other AAMCO® center.

28. Defendants also agreed that upon termination of the Franchise Agreement they would immediately cease any and all use of the AAMCO Marks, assign all telephone numbers used in connection with the Center, and return to AAMCO all operations manuals and other information received from AAMCO in connection with operation of the Center.

29. The Franchise Agreement includes a mandatory arbitration provision under which the parties agreed to arbitrate all disputes, controversies, or claims arising out of or relating to the Franchise Agreement before the American Arbitration Association. The arbitration provision carves out actions, such as this one, for equitable relief related to the use of the proprietary marks and compliance with the covenant not to compete.

**D.    Defendants breached the franchise agreement.**

30. In 2023, AAMCO began to suspect that defendants were underreporting the Center's gross sales, resulting in them underpaying royalties owed to AAMCO. Specifically, AAMCO uncovered evidence that defendants were using decades-old repair order forms from the

old Cottman system in connection with Center sales that were then never reported to AAMCO.

31. AAMCO filed an arbitration demand for damages arising out of defendants' underreporting. That matter is pending.

32. In response, defendants ceased reporting the Center's sales altogether for many weeks.

33. On October 4, 2023, AAMCO issued a notice of default based on defendants' failure to report sales and pay royalties on those sales. AAMCO demanded that defendants cure these defaults by (i) paying the past due royalties within ten days after delivery of the notice, and (ii) submitting the overdue sales reports within thirty days after delivery of the notice. The default notice warned that defendants' failure to timely cure the defaults would result in termination of the Franchise Agreement.

34. Defendants failed to cure the defaults within the cure period afforded to them. On December 11, 2023, AAMCO issued a notice terminating the Franchise Agreement effective immediately.

35. The termination notice demanded that defendants comply with their post-termination obligations by, among other things, (i) discontinuing use of the AAMCO Marks, including by removing all signs, forms, and advertisements that bear the AAMCO Marks from the Center, and (ii) complying with the Franchise Agreement's post-termination noncompetition covenant.

36. Despite defendants' post-termination obligations, defendants continue to operate a competitive transmission repair center under the AAMCO Marks at the same location as the Center. This gives the public the confusing impression that the Center remains an authorized AAMCO® center, when it is not.

37. AAMCO at all times fully performed its obligations under the Franchise Agreement.

## COUNT I - TRADEMARK INFRINGEMENT

38. AAMCO repeats and realleges the foregoing paragraphs 1-37 as if fully set forth herein.

39. Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of the AAMCO Marks and have caused and are likely to cause consumer confusion or mistake and deceive the public in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

40. Defendants' wrongful acts were, and continue to be, knowing and willful.

41. As a direct and proximate result of defendants' infringement, AAMCO has suffered—and unless defendants' infringement is enjoined, will continue to suffer—actual, substantial, and irreparable harm, including, without limitation, diminution in the value of the AAMCO Marks, diminution in the value of its goodwill and reputation, and incalculable lost revenues and profits.

42. AAMCO has no adequate remedy at law because the AAMCO Marks are unique and represent to the public its identity, reputation and goodwill, such that damages alone cannot fully compensate them for defendants' misconduct.

43. Unless enjoined by the Court, defendants will continue to infringe the AAMCO Marks to AAMCO's irreparable injury. This threat of injury to AAMCO's business, identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued infringement of the AAMCO Marks and to ameliorate and mitigate AAMCO's injuries.

## COUNT II - UNFAIR COMPETITION

44. AAMCO repeats and realleges the foregoing paragraphs 1-43 as if fully set forth herein.

45. Defendants' acts, practices, and conduct—including their unauthorized use of the AAMCO Marks in connection with their operation of a competing business—constitutes unfair competition, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristic, qualities, or geographic origin of the parties' goods, services, and commercial activities, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

46. Defendants' acts were, and continue to be, knowing and willful.

47. As a direct and proximate result of defendants' unfair competition, AAMCO has suffered—and unless defendants' unfair competition is enjoined, will continue to suffer—actual, substantial, and irreparable harm, including, without limitation, diminution in the value of the AAMCO Marks and proprietary system, diminution in the value of and damage to their goodwill and reputation, loss of their competitive advantage, and incalculable lost revenues and profits.

48. AAMCO has no adequate remedy at law because the AAMCO Marks and system are unique, were developed at great expense and effort, and represent to the public AAMCO's identity, reputation, and goodwill, such that damages alone cannot fully compensate it for defendants' misconduct.

49. AAMCO also has no adequate remedy at law because the components of the AAMCO system are unique, were developed, tested, refined, and perfected at great expense and effort, and afford AAMCO and its authorized franchisees a competitive edge that is lost if defendants are permitted to continue to use it in breach of the Franchise Agreement, none of which

can be quantified and for which monetary damages alone cannot fully and completely compensate AAMCO.

50. Unless enjoined by the Court, defendants will continue to compete unfairly with AAMCO to its irreparable injury. This threat of injury to AAMCO and its business, identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued unfair competition and to ameliorate and mitigate AAMCO's injuries.

### **COUNT III – BREACH OF CONTRACT – SPECIFIC PERFORMANCE**

51. AAMCO repeats and realleges the foregoing paragraphs 1-50 as if fully set forth herein.

52. Defendants' refusal to comply with their post-termination obligations under the Agreement, including, without limitation, their covenant to not compete, constitutes a material breach of the Franchise Agreement.

53. As a result of these ongoing breaches, AAMCO has suffered and will continue to suffer actual, substantial, and irreparable harm, including without limitation, loss of customer goodwill and loyalty, franchise system instability, the inability to refranchise the territory formerly serviced by defendants' AAMCO® center, lost profits, diminution in the value of the AAMCO system, damage to AAMCO's goodwill, and loss of competitive advantage.

54. AAMCO has no adequate remedy at law because the AAMCO system is unique, was developed at great expense and effort, and affords AAMCO and its authorized franchisees a competitive edge that is lost if defendants are permitted to continue to use it, none of which can be quantified and for which monetary damages alone cannot fully and completely compensate AAMCO.

55. Absent injunctive relief enjoining their misconduct and ordering specific

performance of their post-termination covenant to not compete, defendants' material breaches will continue to cause AAMCO irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE,** AAMCO respectfully prays for the following relief against defendants:

A. A preliminary and permanent injunction enjoining defendants and their respective agents, servants, and employees, and those people in active concert or participation with them, from:

1. Using the AAMCO Marks, or any trademark, service mark, logo, or trade name that is confusingly similar to the AAMCO Marks;

2. Passing off any products or services as those of, or associated with, AAMCO or AAMCO's authorized franchisees;

3. Causing a likelihood of confusion or misunderstanding as to their affiliation, connection, or association with AAMCO or AAMCO's franchisees, or with any of their products or services; and

4. Unfairly competing with AAMCO or AAMCO's franchisees in any manner.

B. A preliminary and permanent injunction directing defendants and their respective agents, servants, and employees, and those people in active concert or participation with them, to fully perform their contractual obligations, including, without limitation, their obligations to refrain from competing with AAMCO in the manner required by the Franchise Agreement;

C. An order that defendants file with the Court and serve upon plaintiffs' counsel within ten days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

D. An award of the costs and expenses, including reasonable attorneys' fees and costs,

incurred by plaintiffs in connection with this action; and

E. Such other and further relief as the Court deems just and proper.

Dated: January 22, 2024            Respectfully submitted,

**AAMCO TRANSMISSIONS, LLC**

By: _____

Kevin J. O'Connor
PECKAR & ABRAMSON, P.C.
70 Grand Avenue
River Edge, New Jersey 07661
(201) 343-3434
koconnor@pecklaw.com

-and-

Aaron-Michael Sapp (*pro hac vice forthcoming*)
Stephen C. Jarvis (*pro hac vice forthcoming*)
CHENG COHEN LLC
363 W. Erie Street, Suite 500
Chicago, Illinois 60654
Tel.: (312) 243-1701
Fax: (312) 277-3961
asapp@chengcohen.com
stephen.jarvis@chengcohen.com